CHARLES SHEPPARD,

        Plaintiff,

v.                                              Case No. 24-cv-0955-bhl

CAPTAIN CRASPER,
WARDEN DAN CROMWELL,
SECURITY DIRECTOR GIROUX,
DEPUTY WARDEN THOMAS,
SUPERVISOR SELJE,
DOC SECRETARY JARED HOY,
SARAH COOPER,
CAPTAIN DOYLE,
JOHN DOE POLICE OFFICER,
JL MARCUS INC.,
SERGEANT BATES, and
UNIT MANAGER INGETHRON,

        Defendants.

## SCREENING ORDER

      Plaintiff Charles Sheppard, who is currently serving a state prison sentence at New Lisbon Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. Sheppard paid the $405 civil case filing fee on August 30, 2024. This matter comes before the Court to screen the complaint, as required by 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

      The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to Sheppard, sometime in mid-2023 he was housed with an inmate who informed him that Defendant Sgt. Bates had told him that Sheppard uses and sells drugs and that

he fakes his disabilities. The inmate also allegedly told Sheppard that Bates said the inmate would get a job only if he confirmed her statements. Sheppard asserts that he reported what he had been told to Defendant Unit Manager Ingethron and others. Supervisors spoke to the other inmate, who confirmed to them what he had told Sheppard.

Months later, a different inmate allegedly told Sheppard that Bates had told him he would get a job only if he confirmed Sheppard sells and uses drugs. Sheppard asserts that he again informed supervisors, including Defendant Captain Crasper and Unit Manager Ingethron, but nothing was done. Sometime after that, Bates allegedly told a third inmate to get proof that Sheppard and a different inmate were selling and using drugs. Bates also allegedly told the third inmate to get Sheppard and the other inmate high because high people talk more. Sheppard asserts that he again reported these statements to Unit Manager Ingethron and Captain Crasper as well as Defendants Warden Dan Cromwell, Security Director Giroux, and Deputy Warden Thomas. Sheppard asserts that he also wrote to the New Lisbon Police Department about the incident. Ultimately, no one did anything other than move Sheppard to a different unit.

Sheppard asserts that, on May 17, 2024, Captain Crasper came to his cell and told him he needed to "recant" the grievances he had filed against Bates and dismiss the lawsuit he had filed against New Lisbon staff or else he would find a reason to put Sheppard in segregation and make his time at the institution very difficult. Sheppard states that he immediately wrote to the Security Director, the Warden, and the Deputy Warden, but they did not do anything to help him. According to Sheppard, that same day, an officer (who is not a Defendant) entered his cell, ostensibly to pack up his cellmate's property. Sheppard asserts that instead of packing his cellmate's property, the officer spent two hours in his cell with her attention focused on Sheppard's property (he does not explain how he knows this).

3

About a week later, on May 23, 2024, Sheppard was handcuffed and told by Captain Crasper that he was being taken to segregation. He was informed that prayer oil taken from his cell tested positive for heroin and fentanyl. Sheppard explains that he purchased the prayer oil from Defendant J. L. Marcus in Milwaukee, Wisconsin. Sheppard asserts that a lieutenant (who is not a Defendant) told him that a lot of the oil J. L. Marcus sells to inmates has tested positive for heroin and other drugs.

The next day, Captain Crasper told Sheppard that he had been given the chance to recant but he instead chose to snitch to the Warden, Deputy Warden, and Security Director. He allegedly told Sheppard that staff are loyal to one another and Sheppard just made it worse for himself, guaranteeing that he would be sent back to maximum security. Captain Crasper's comments confirmed to Sheppard that Defendants were all working together to falsify charges against him so he would be sent back to a maximum security institution. According to Sheppard, Captain Crasper wrote a false conduct report accusing Sheppard of being in possession of synthetic cannabinoid.

At some point, a John Doe New Lisbon police officer came to interview Sheppard, who allegedly begged the officer to have the items tested for drugs. The officer allegedly did nothing. A few days later, Sheppard received a third conduct report. This one stated that all the pages in one of Sheppard's novels tested positive for heroin. Sheppard believes he received this conduct report in retaliation for the statements he made to the police. Sheppard also asserts that his due process rights were violated because Defendant Cydney Selje and Robert Doyle did not allow Sheppard to call witnesses at his disciplinary hearings. He also notes that Captain Crasper served as the hearing officer at one of his disciplinary hearings despite having been involved in issuing the conduct report.

4

Case 2:24-cv-00955-BHL    Filed 09/16/24    Page 4 of 14    Document 9

According to Sheppard, the Warden, the Deputy Warden, and the Security Director failed to train staff on how to do drug testing. Further, Sheppard asserts that they know that the machine they use for drug testing regularly renders false positives. Finally, he asserts that the Warden, Security Director, and Deputy Warden have created an atmosphere that allows staff to retaliate and punish inmates with false charges.

Sheppard also asserts that DOC Secretary did nothing and that Sarah Cooper, who is in charge of the Division of Adult Institutions, has persisted in allowing institutions to use a drug testing machine that she knows renders false positives. He highlights that, unlike with a urinalysis test, inmates have no option to seek independent testing at their own expense of items that test positive for drugs.

## THE COURT'S ANALYSIS

Sheppard's complaint is heavy on complaints and insinuations against the Defendants but light on actual violations of his rights. His allegations are both vague and contradictory, making it difficult to guess what Sheppard believes the Defendants did that violated his federal rights. Because he is proceeding without counsel, the Court will read his allegations liberally, but even so, his complaining does not equate to a violation of the Constitution or other federal law.

Sheppard begins by alleging that, sometime in 2023, Officer Bates asked a number of other inmates if they could provide proof that he was dealing and using drugs. He suggests that she would obtain jobs for them if they came forward with that proof. But Sheppard does not allege that any of these other inmates provided false proof against him or that he suffered any adverse consequences from Officer Bates' inquiries. Officers routinely develop sources within prisons to obtain information about misconduct and doing so does not violate a prisoner's constitutional rights. *See, e.g., Williams v. Raemisch*, 545 F. App'x 525, 529 (7th Cir. 2013) (officers properly

relied on statements of two informants to implicate plaintiff in drug trafficking). If the corrections officer had successfully coerced or bribed another inmate to provide false testimony and then used that false evidence to sanction Sheppard, that conduct—suborning perjury—might give rise to a claim. *See, e.g., Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985) (holding that "[t]o protect the inmate's interest in a fair hearing, our court requires some indication of the reliability of confidential informants when confidential information is the basis for a prison disciplinary decision."). But Sheppard does not allege such conduct. At most Sheppard might have felt harassed by Bates' allegedly misguided focus on him, but based on his own allegations, her suspicions were apparently not confirmed because the other inmates were unable or unwilling to provide her with the requested "proof." Accordingly, Sheppard has not identified any constitutional harm that he suffered as a result of her allegedly mistaken belief that he uses and deals drugs. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) ("In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages."). The Court cannot reasonably infer that her actions violated Sheppard's constitutional rights simply because she attempted to ferret out whether he was a prisoner responsible for the distribution of drugs at the institution. Accordingly, Sheppard fails to state a claim against Bates based on these allegations and against the supervisory staff who allegedly failed to address her actions.

  Sheppard next alleges that, in May 2024, Captain Crasper told him he needed to "recant" grievances he had filed against Bates and dismiss his lawsuit against the New Lisbon staff. Sheppard does not explain what grievances or what lawsuit he is referring to. He alleges that he lodged complaints against Bates regarding her efforts to prove he was using and dealing drugs in mid-2023 and the months immediately thereafter. Dkt. No. 1 at 2-3. Under the grievance process,

6

however, any inmate complaints had to be filed within fourteen days of the underlying events. *See* Wis. Stat. §DOC 310.07(2). Accordingly, any grievances related to Bates' efforts to obtain evidence to support charges of drug dealing against Sheppard from the three inmates he identifies would necessarily have been resolved long before May 2024, when he alleges he was told to recant. And Court records confirm the only lawsuit Sheppard had pending in May 2024 was against staff at *Fox Lake Correctional Institution*, not New Lisbon Correctional Institution. *See Sheppard v. Korus*, Case No. 22-cv-0902-bhl. Sheppard's own factual allegations are therefore inconsistent with his retaliation allegations and he has offered no plausible basis for Captain Crasper's threats.

Sheppard also alleges that Captain Crasper threatened to have him transferred to a maximum security institution and/or placed in segregation. But, according to the inmate locator, Sheppard continues to be incarcerated at New Lisbon, so no retaliatory transfer occurred. And Sheppard's own factual allegation show he was placed in segregation because three different officers issued him conduct reports after multiple items in his possession tested positive for drugs. (The Court will address Sheppard's allegations regarding the testing of those items later in this decision). Based on these allegations, even if Sheppard had plausibly alleged he engaged in protected activity and that the activity played a part in the decision to discipline him, his retaliation claim would fail. *See Winston v. Fuchs*, 837 F. App'x 402, 404-05 (7th Cir. 2020) (holding that, even if a grievance "played a part in th[e] decision to discipline [the plaintiff], no First Amendment violation occurred if the same decision would have been reached had [the plaintiff] filed no grievance") (citations omitted); *see Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011) (explaining that if the plaintiff would have suffered the identical harm, then "the defendant's improper motive would have done no work, had no effect, left the world unchanged").

7

Sheppard next alleges that an officer (who he does not name as a Defendant) searched his cell, and, a week later, issued him a conduct report because his prayer oil tested positive for heroin and fentanyl. Sheppard first concludes that the officer fabricated the conduct report, but then he asserts that the institution's testing machine produced a false positive. Given Sheppard's allegation that the machine produced a false positive, the officer's conduct report based on that result was not false. An officer cannot be liable for violating Sheppard's rights if she relied on test results. *See Easter v. Saffle*, 51 F. App'x 286, 289 (7th Cir. 2002) (explaining that a disciplinary determination based on the results of a single drug test satisfies due process). Consistent with the validity of the test results, Sheppard *then* asserts that the oil was in fact laced with drugs, *i.e.,* the test results were accurate, and that an officer told him that lots of the oil sold by that vendor has been testing positive for drugs. Sheppard asserts that the vendor, Defendant J. L. Marcus, should therefore be liable, but Sheppard cannot sue the vendor under §1983 because it is not a state actor. *See, e.g., Hoskins v. TCF Nat'l Bank*, 248 F. App'x 742 (7th Cir. 2007) (holding that because a prisoner's allegations involved "purely private business activities" the bank was not a state actor); *Steading v. Thompson*, 941 F.2d 498, 499 (7th Cir. 1991) ("A private firm does not become a state actor by selling its products to the government."). Moreover, if the oil actually contained illegal drugs as Sheppard alleges, then, not only was the conduct report not false, but the drug-testing machine did not produce a false positive. Sheppard suggests similar inconsistent and contradictory theories with regard to the other items that tested positive for drugs. In the end, none of these confusing and internally inconsistent assertions is sufficient to allow the Court to reasonably infer that any named Defendant engaged in any wrongdoing related to the positive drug tests, including the staff who wrote the conduct reports.

Sheppard also sues an unidentified John Doe police officer who spoke to him at his request but then allegedly did nothing to help him. This too does not state any constitutional violation. The mere fact that a police officer speaks with a prisoner but then declines to act in accordance with demands for an investigation does not make the officer liable. Officers are not required to open investigations just because a citizen files a complaint. *See, e.g., Johnson v. Piontek*, 799 F. App'x 418, 419 (7th Cir. 2020) (explaining that private citizens cannot pursue claims under federal criminal statutes and do not have standing to prosecute individuals for alleged violation of Wisconsin criminal statutes). The John Doe Officer apparently decided that a criminal investigation into the prison officials' actions was not required, and his exercise of that discretion was not unconstitutional, nor did it cause or contribute to any harm that Sheppard believed he was experiencing. *See, e.g., George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (rejecting the position "that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself").

Similarly, Sheppard fails to state a claim against supervisory staff, including Warden Cromwell, Deputy Warden Thomas, Security Director Giroux, DOC Secretary Hoy, and Cooper, who oversees the Division of Adult Institutions, based on allegations that they failed to intervene after he received conduct reports for possessing drugs. Sheppard was given the opportunity to defend himself during a disciplinary hearing (the Court will address his allegations about the hearings' deficiencies below) and then the opportunity to appeal the hearing officers' decisions. Sheppard is not entitled to demand that every official he writes "drop everything he or she is doing in order to investigate a single prisoner's claims" and then collect damages when he does not get the outcome he desires. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). These officials are

9

entitled to defer to the process available to prisoners for defending against conduct reports and appealing adverse decisions.

Sheppard also fails to state a claim against Selje, Doyle, and Captain Crasper based on alleged due process violations that occurred during the disciplinary proceedings for the three conduct reports he received. "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Sheppard asserts that he was placed in segregation (as noted above, a transfer to a maximum security institution did not occur), but he does not allege how long he will remain in segregation nor does he provide insight into the conditions of his confinement while in segregation. According to the documents Sheppard attaches to his complaint, he received a disposition of ninety days for one of the three conduct reports. Under Seventh Circuit precedent, any stay in segregation less than six months, standing alone, "is not enough to implicate a liberty interest that triggers due process rights." Given the lack of information about the length of Sheppard's stay in segregation and the conditions while he was there, the Court cannot reasonably infer that he had a constitutionally protected liberty interest.

In any event, even if Sheppard *had* sufficiently alleged that he possessed a protected liberty interest, his allegations do not suggest that his due process rights were violated. The Seventh Circuit has clarified that "inmates facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," are entitled to only "informal due process." *Ealy*, 109 F.4th at 966. "[I]nformal due process requires only that an inmate is provided (1) notice of the reasons for the inmate's placement in segregation and (2) an opportunity to present his views, for instance, in a written statement or

at a hearing." *Id.* According to the complaint, Sheppard received notice of the charges in the conduct reports and was able to present his version of what happened at the disciplinary hearings. Sheppard therefore received the process he was due.

Sheppard also fails to state a due process claim based on allegations that the DOC does not permit inmates to seek independent re-testing at their own expense of items that test positive for drugs. Due process demands that "the findings of a prison disciplinary board have the support of some evidence in the record." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). It is not the role of the Court to "assess the comparative weight of the evidence underlying the disciplinary board's decision." *Id.* The only question the Court must answer is "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* The Seventh Circuit has explained that a single positive test amounts to "some evidence" and therefore satisfies the requirements of due process. *Easter v. Saffle*, 51 F. App'x 286, 289 (7th Cir. 2002) (citing *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993), for the proposition that "due process does not require prison officials to provide second urinalysis by impartial laboratory"). The appellate court further observed that "[t]hough the risk of false positives has not been entirely eliminated, we agree . . . that the use of the test results may be relied upon as sufficient evidence to warrant prison discipline . . . ." *Id.* (citations omitted).

Finally, Sheppard fails to state a claim that DOC supervisory staff have been deliberately indifferent to the substantial risk of the drug-testing machines producing false positives. Sheppard alleges that the machines are unreliable and produce false positives, but he includes no factual allegations to support those conclusory assertions. This is not something he would know first-hand; he is merely speculating. He similarly offers no factual allegations to support a finding that Defendants had knowledge of the alleged unreliability of the machines when staff used the results

11

of the tests to proceed with conduct reports against him. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted). In other words, Sheppard must provide factual content to support his contention that the machines are producing false positive results and that Defendants knew inmates were being disciplined based on those false positives. Sheppard's say-so, without more, is insufficient to state a claim.

The Seventh Circuit has explained that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Sheppard believes he can cure the deficiencies identified in this decision, he may file an amended complaint by **October 16, 2024**. He is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). Sheppard is reminded that a defendant is liable for damages under §1983 only if he was personally responsible for the deprivation of a constitutional right. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Sheppard should therefore clearly state who was involved, how they were involved, and what he believes they did or did not do to violate his rights. Assertions that multiple people violated his rights without factual allegations to supporting his conclusion will be insufficient to state a claim.

If an amended complaint is received by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this action based on Sheppard's failure to state a claim in his original complaint. If Sheppard does not believe

12

Case 2:24-cv-00955-BHL   Filed 09/16/24   Page 12 of 14   Document 9

he can cure the deficiencies identified in this decision, he does not have to do anything further. The Court will enclose an amended complaint form along with this decision.

Finally, the Court acknowledges that Sheppard filed an emergency motion for preliminary injunction on the same day he filed his complaint. But, given that the complaint fails to state a claim, the Court will not address the motion at this time. The Court will order Defendants to respond to the motion in the event Sheppard files an amended complaint that states a claim.

**IT IS THEREFORE ORDERED** that on or before **October 16, 2024**, Sheppard may file an amended complaint if he believes he can cure the defects in the original complaint as described in this decision. If the Court does not receive an amended complaint by the deadline, the Court will dismiss this action based on the original complaint's failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Sheppard a blank prisoner amended complaint form.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Sheppard is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on September 16, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge